## IN RE APPLICATION FOR DISCIPLINE OF
## RALPH C. STREATER.

115 N. W. (2d) 729.

May 25, 1962—No. 38,287.

*Glen P. Powrie,* for petitioner.
*Ralph C. Streater,* pro se, and *John Frundt,* for respondent.

PER CURIAM.
Proceedings for the disbarment of Ralph C. Streater, an attorney

admitted to the practice of law in Minnesota. A petition for his disbarment or for such other discipline as this court may determine was filed here by the Practice of Law Committee of the Minnesota State Bar Association on November 14, 1960. Therein some 12 accusations were set forth, relating principally to respondent's misconduct in handling certain described estates for probate, wherein he collected attorney's fees in most instances, but thereafter failed to proceed with the probate proceedings or to close the estates. The committee charged also that respondent, contrary to the canons of ethics of the legal profession, had solicited estate planning business by letters, wherein he described himself as an "estate planning consultant."

This court ordered the petition served upon respondent, and on December 23, 1960, he filed his answer. Therein he admitted the truth of certain of the accusations of the petition; explained his delay in closing certain of the estates described in the petition; alleged that the letter, wherein he solicited estate planning business, had been sent out by him as insurance salesman, not as an attorney, after he had decided to quit the practice of law and to engage in the insurance business; and that after being admonished by the bar he had immediately ceased sending out further letters of the type described.

As a further defense, he alleged that during the period covered by the accusations he had been suffering from an emotional and mental illness making it impossible for him to conduct his law business; that he was sick to such an extent that he could not properly discharge his duties as an attorney; that he had consulted a psychiatrist and was under treatment by him; that the psychiatrist had advised him that he should give up the practice of law and that he had sold all of his law books and office supplies and had turned over his law business to other attorneys for completion; and that he never intended to return to the practice of law.

The answer further alleged that during part of the time covered by the accusations he was county attorney for Faribault County, and that his work therein was so heavy that he did not have the time and capacity to at the same time complete his cases and probate matters in his private law practice.

He finally set forth that, while he probably had no legal defense to

the accusations against him, he prayed that this court permit that his license and authority to practice be continued, for the reason that, if these were taken from him, he would be unable to fulfill either his financial obligations to clients, to whom he had given his promissory notes to cover damages which they had suffered because of his failure to complete their legal matters, or those required for the support of his family.

On January 12, 1961, this court referred the proceedings to the Honorable A. C. Richardson, Judge of the District Court of the Third Judicial District, to conduct hearings and report evidence with respect to the accusations described and respondent's defense thereto and thereafter to report to this court his findings therein. Pursuant thereto, after a pretrial conference a hearing was conducted in the courthouse in Blue Earth in Faribault County. Therein both the Practice of Law Committee and respondent appeared with counsel who executed and submitted a stipulation of facts. Therein it was set forth that in one described estate in which respondent had been retained and in which he had collected attorney's fees in advance he had failed and neglected to respond to requests of the Practice of Law Committee to explain his delay therein, or to proceed to close such estate.

On September 11, 1961, the referee duly filed his report which included his findings of fact and recommendations. Therein, he found that with respect to specific accusations of the committee, in 10 of the described estates, respondent had handled the legal work involved in a neglectful and dilatory manner, and that he ignored requests from the Practice of Law Committee to explain his handling of one of these estates. A number of them were ultimately referred to other attorneys to close. The referee further reported as follows:

"* * * The Respondent developed a mental quirk so that he could not bring himself to tackle even the ordinary routine problems incident to closing of an estate in Probate Court.

"The Respondent adopted the unusual practice of collecting in advance his fee in these probate matters. * * *

\* \* \* \* \*

"The Respondent is unfitted to engage in the practice of law. The

Respondent recognizes this. The Respondent has not practiced law since the early Fall of 1960, and he testified that he does not wish or intend to practice law in the future. In the early Fall of 1960 the Respondent sold his law library and quit the practice of law and has not practiced law since. He is engaged in the insurance business.

"The Respondent is a man of good character generally, qualified by the moral implications flowing from his practice of the collection of advance fees in probate matters and then not doing the work for which he was paid.

"The Respondent requests that he be permitted to resign his right to practice law, and that no order of the Supreme Court be entered suspending him or disbarring him from the practice of law.

### "RECOMMENDATIONS

\*  \*  \*  \*  \*

"I recommend that the proceedings herein be stayed subject to further order of the Supreme Court, and that the Respondent be granted leave to resign as an attorney at law of the State of Minnesota, and to surrender up his certificate of admission or license to practice law."

The deposition of J. B. Lund, M.D., a psychiatrist engaged in the practice of his profession in Mankato, was also submitted. Therein, he testified that after a number of consultations with respondent he had concluded that respondent was suffering from a neurosis of long standing, with considerable amount of depression; that he was essentially a rather obsessive, compulsive type of personality with a chronic anxiety which would set the stage for his inability to perform his legal work in a normal fashion; and that he had advised respondent not to resume legal work. In cross-examination he admitted that his conclusions were based upon an hour's visit with respondent on December 2, 1960, and short visits on December 16, 1960, and January 19, 1961, for a total of 2 hours and 15 minutes, during which most of the time had been consumed in discussions with respondent and in the giving of certain tests.

In a petition filed by respondent simultaneously with the referee's report, he sought to explain his conduct with reference to the various

accusations. Therein he admitted the truth of a number of them and set forth the following:

"Your petitioner * * * states that he is fully cognizant of the opinion of Dr. J. B. Lund; that he is psychologically composed in such a way that he should not attempt to practice law; that the opinion of Dr. Lund * * * actually confirmed his own idea which he had reached before he consulted Dr. Lund; that your petitioner has no idea of ever applying for readmission to the practice of law either in Minnesota or elsewhere; * * *."

He recited again his obligation of supporting his family and of repaying a number of clients damages which they had sustained because of his misconduct and stated further that if disbarment proceedings were completed his reputation as an individual would be greatly damaged and his opportunity of fulfilling these obligations would be greatly jeopardized. Accordingly he proposed that the petition and accusations against him be dismissed and that he then be permitted to resign his right to practice law.

He proposed further that the record of his admissions of misconduct might then be sealed and considered as immaterial until such time as he should feel that he has adequately recovered from his mental condition and would wish to reapply for admission to the bar, at which time all such matters could be given consideration. He stated further, however, that he has no present idea of ever attempting such reapplication, but feels that it would be to the best interests of the bar if a policy like this were adopted to apply in like situations, so that lawyers who find they are unsuited for the practice of law might resign from the profession without the stigma which follows disbarment.

■ We have carefully examined the files and proceedings herein and are satisfied that the findings of the referee are amply supported by the record. Respondent does not dispute the fact that the evidence and findings of the referee establish violation of his duties and responsibilities as an attorney. Notwithstanding this, this court is asked to consider his request that he be permitted to resign as an attorney and terminate his practice of law in lieu of being disbarred. This request

is based primarily upon his mental condition, which he contends would justify granting it. He blames his violations and misconduct upon a state of mind which, he asserts, made it impossible for him to proceed with legal matters entrusted to him for probate. He urges the deposition of Dr. Lund in support of his position.

■ We feel that, on the record here, this court cannot follow the procedure requested by respondent. As was stated in In re Application for Discipline of Hanson, 258 Minn. 231, 233, 103 N. W. (2d) 863, 864:

"Courts are charged with the duty of controlling the qualification and conduct of attorneys at law in order that there may be no compromise whatever of the moral and ethical standards upon which the functioning of our legal system depends. The purpose of disciplining an attorney is not to punish him, but to guard the administration of justice and to protect the courts, the legal profession, and the public. The public interest is and must be the paramount consideration; and the primary duty of the court must be protection of the public. Clear violation of a lawyer's duties to his clients and to the public compels an order of disbarment. The enlistment of a natural human sympathy for respondent's unrelated misfortune cannot be permitted to deter us from performance of this duty."

■ The referee recommends that this court grant respondent's petition to be permitted to resign rather than to be disbarred. In support thereof, he quotes from Application of Smith for Reinstatement as Attorney, 220 Minn. 197, 19 N. W. (2d) 324, wherein the court set forth the purpose of disbarment as later approved in In re Application for Discipline of Hanson, *supra*. He urges that the resignation of respondent as an attorney would serve the purposes outlined therein in guarding the administration of justice and protecting the courts, the legal profession, and the public, and jeopardize none of them. But if this court were to establish as a precedent that an attorney, notwithstanding flagrant violations of his professional duties and responsibilities, could, when pressure for disbarment became acute, urge that his mental condition had brought about such misconduct and that therefore he should be permitted to resign, the result would scarcely operate as a deterrent

against legal misconduct. We feel that where misconduct and violation of the canons of ethics justify disbarment such a penalty must follow.

Let judgment of disbarment be entered.

FRANK T. GALLAGHER, JUSTICE (dissenting).

It is my opinion under the record here that respondent's request for permission to resign as an attorney and terminate his practice of law in lieu of being disbarred should be granted in accordance with the recommendations of the referee referred to in the majority opinion.

It seems to me that the difficulties and misconduct of the respondent here may have been attributable to his mental state, which his doctor testified disqualified him from the practice of law. If his actions were not the result of any voluntary choice on his part, it is my opinion that the severe penalty of disbarment should not be imposed.

Keeping in mind the viewpoint of this court expressed in In re Application for Discipline of Hanson, 258 Minn. 231, 103 N. W. (2d) 863, referred to by the majority, to the effect that punishment of the attorney is not the primary object of disbarment proceedings, but rather the protection of the courts, the profession, and the public, it appears to me that in this case, where the respondent is willing to resign and permanently discontinue the practice of law, he should be permitted to do so and his disbarment should not be ordered. For these reasons I respectfully dissent from the majority opinion.