In the Matter of the Application for the DISCIPLINE OF Dennis F. PECK, an Attorney at Law of the State of Minnesota, and for the Appointment of a Trustee.

No. 51577.

Supreme Court of Minnesota.

Jan. 30, 1981.

not allowed across priority levels.

Michael J. Hoover, Director of Lawyers Professional Responsibility, and Richard C. Baker, Staff Atty., Lawyers Professional Responsibility, Lawyers Professional Responsibility Board, St. Paul, for appellant.

Dennis F. Peck, pro se.

PER CURIAM.

This is a petition brought by the Lawyers Professional Responsibility Board (LPRB) for the discipline by this court of Dennis F. Peck, an attorney at law of the State of Minnesota, and for the appointment of a trustee. The LPRB recommends, *inter alia*, that the respondent's authority to practice law be terminated.

Respondent was admitted to practice in Minnesota on September 25, 1974. He has been a sole practitioner until January, 1980, when he ceased to practice law. During 1979 and 1980, respondent has been the subject of three separate disciplinary proceedings. The first proceeding was brought before the LPRB on May 18, 1979; the second on October 19, 1979; and the third on July 11, 1980. The present petition for disciplinary action and for the appointment of a trustee resulted from the July 11, 1980, LPRB hearing.

*The May 18, 1979, Hearing*

This first hearing arose from the complaint of a Mr. Desmond, who retained respondent to represent him in a workers' compensation case. Respondent prepared a petition and states that he thought he had filed it. He states that when he discovered that he had not filed the petition, he falsely notarized a blank form signed by his client and filed it.

Respondent admitted the complaint and declared that he did not have any other files in a state of neglect. He also entered into a stipulation agreeing to two years of private supervision.

*The October 19, 1979, Hearing*

This hearing was the result of a complaint from a Ruth Terwedow. Ms. Terwedow had retained respondent to enforce a prior judgment in her favor. Respondent reached a settlement and on June 28, 1979, was sent a $4,000 cashiers check. Respondent advised Ms. Terwedow that he had received the check. He had her execute a satisfaction of judgment, but refused to give her the check until the opposing attorney received the satisfaction. Finally, on August 2, 1979, respondent admitted that the check was lost. After Ms. Terwedow complained to the LPRB respondent gave her a personal check for $4,000. Respondent has admitted these allegations.

As a result of this complaint the LPRB approved a stipulation whereby respondent agreed to private supervision; agreed to wind up his law practice no later than January 1, 1980; and agreed to take necessary steps to inform his clients of the stipulation so that they could arrange adequate representation.

*The July 11, 1980, Hearing*

This hearing discussed several new allegations against respondent as well as the previously-discussed ones. Respondent has substantially admitted all of the allegations, which are summarized as follows:

In late 1977 respondent was retained by Ms. Terwedow to initiate a civil lawsuit. He did so by filing a summons and complaint in October 1978. However, thereafter respondent completely neglected the file; he never filed the summons and complaint with the appropriate court, he never pursued discovery, nor did he take any other action.

In November 1977 respondent was retained by a Mr. Jain to bring a lawsuit against the previous owner of Mr. Jain's home. Respondent states that Mr. Jain failed to supply some necessary information and as a result the summons and complaint were never served or filed. However, in November of 1979, in response to Mr. Jain's inquiries, respondent had lied to Mr. Jain

and told him that the lawsuit was proceeding.

In June 1978 respondent was retained by Roxanne Fleischaker to represent her in a personal injury case. He accepted the case but never sued it out. His only action on the file was to write one letter to the potential defendant, which went unanswered. In spite of this lack of action, respondent advised his client he was working for a settlement.

In 1978 respondent was hired by Steve Hurbruk to start a suit against the State of Minnesota and/or a group of health carriers. He drafted the complaint but never served or filed it. Respondent states that the client had not paid the requested fee; however, respondent led the client to believe the lawsuit was progressing.

In 1979 Don Fleischaker retained respondent to file his corporate income tax return (respondent had timely filed his return in 1978). Respondent accepted the work in spite of his agreement with the LPRB not to take new clients.[1] Respondent did nothing to prepare the returns until he turned them over to another attorney in February or March of 1980.

In March 1978 respondent was hired by Mrs. Mary Sobanski to handle the estate of her husband. Respondent states that he mistakenly closed the file and consequently never filed inheritance tax returns. He also failed to notify Mrs. Sobanski that he was leaving the practice of law.

Respondent was retained by Donnelly Electric with regard to some mechanics liens. Respondent filed the initial notice of mechanics lien, but then totally neglected the file.

Respondent also failed to keep trust account records in accordance with DR 9–103(A).[2] Respondent also commingled trust account and personal funds, although it does not appear that any of the funds were used for office expenses or personal use.

In March 1980 respondent met with Mr. Baker, of the LPRB, to allow Mr. Baker to examine his books and records. Since the records were not current respondent agreed to provide Mr. Baker with updated records. However, these records were not provided until July 9, 1980, two days before the July 11, 1980, hearing.

Mr. Pecchia, the attorney who purchased respondent's office assets and is handling

1. However, since respondent had prepared returns in previous years, this could be considered an existing obligation.

2. DR 9–103(A) provides as follows:

Every lawyer engaged in private practice of law shall maintain or cause to be maintained on a current basis books and records sufficient to demonstrate income derived from, and expenses related to, his private practice of law, and to establish compliance with DR 9–102. The books and records shall be preserved for at least six years following the end of the taxable year to which they relate or, as to books and records relating to funds or property of clients, for at least six years after completion of the employment to which they relate.

DR 9–102 provides:

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(B) A lawyer shall:

(1) Promptly notify a client of the receipt of his funds, securities, or other properties.

(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

many of respondent's previous clients, testified at the hearing as to other files respondent has neglected. Mr. Pecchia also testified that respondent had cancelled or not shown up for many of the meetings scheduled to discuss ongoing files.

*The LPRB Petition and Recommendation*

The LPRB has instructed its director, Michael J. Hoover, to file this petition. The LPRB recognizes that termination could be effected by either allowing respondent to resign pursuant to Rule 11 [3] or by ordering his indefinite suspension or disbarment.

Petitioner requests the appointment of a trustee pursuant to Rule 15(b), Rules of Professional Responsibility. Rule 15(b) provides as follows:

> (b) *Protection of Clients.* When a lawyer is disciplined or permitted to resign, this Court may issue orders as may be appropriate for the protection of clients or other persons.

It is requested that this court direct petitioner to make suitable arrangements with an attorney acceptable to petitioner to act as trustee; the trustee to take possession of respondent's files, inventory them, and take such actions on behalf of respondent's clients as may be necessary for their protection. It is further requested that this court award petitioner costs of $500 and disbursements and further direct respondent to pay the trustee's expenses, including reasonable compensation for his services.

*Summary of Violated Disciplinary Rules*

In the July 17, 1980, Stipulation, respondent admitted the following:

> (i) That his repeated neglect and misrepresentation to clients violated DR 1–102(A)(4), DR 1–102(A)(5), DR 1–102(A)(6), DR 6–101(A)(3), DR 7–101(A)(1), DR 7–101(A)(2), and DR 7–101(A)(3), of the Code of Professional Responsibility.

> (ii) That the loan and false notarization in the Esmond matter violated DR 1–102(A)(4), DR 1–102(A)(5), DR 1–102(A)(6), DR 5–103(B), and DR 7–102(A)(8), of the Code of Professional Responsibility.

> (iii) That his commingling of client funds, failure to maintain adequate books and records, and false certification to this Court regarding compliance with DR 9–103, violated DR 1–102(A)(1), DR 1–102(A)(4), DR 1–102(A)(5), DR 1–102(A)(6), and DR 9–102(A), of the Code of Professional Responsibility, and Opinion No. 9 of the Lawyers Professional Responsibility Board.

> (iv) That his failure to cooperate with the investigation of ethics complaints filed against him and that his affirmative misrepresentations in the May 18, 1979 Stipulation violated DR 1–102(A)(1), DR 1–102(A)(4), DR 1–102(A)(5), and DR 1–102(A)(6), of the Code of Professional Responsibility, and the holding of the Minnesota Supreme Court in *In re Cartwright*, 282 N.W.2d 548 (Minn.1979).

Respondent urges this court to allow him to resign, while petitioner argues that indefinite suspension or disbarment would be the appropriate remedy. This court has summarized its role in disciplinary actions as follows:

> Courts are charged with the duty of controlling the qualification and conduct of attorneys at law in order that there may be no compromise whatever of the moral and ethical standards upon which the functioning of our legal system depends. The purpose of disciplining an attorney is not to punish him, but to guard the administration of justice and to protect the courts, the legal profession, and the public. The public interest is and must be the paramount consideration; and the primary duty of the court must be protection of the public. Clear violation of a lawyer's duties to his clients and to the public compels an order of disbar-

---

**3.** Rule 11, of the Rules on Lawyers Professional Responsibility, provides as follows: "RESIGNATION. This court may at any time, with or without a hearing and with any conditions it may deem appropriate, grant or deny a lawyer's request to resign from the bar."

ment. The enlistment of a natural human sympathy for respondent's unrelated misfortune cannot be permitted to deter us from performance of this duty.

*In re Hanson*, 258 Minn. 231, 233, 103 N.W. 863, 864 (1958) (footnote omitted).

This court has repeatedly held that resignation is not an effective deterrent to other future legal misconduct. Where discipline (disbarment or suspension) is justified, it must follow. *See In re Johnson*, 290 N.W.2d 604 (Minn.1980); *In re Hetland*, 275 N.W.2d 582 (Minn.1978); *In re Streater*, 262 Minn. 538, 115 N.W.2d 729 (1962).

Since discipline must be invoked if warranted, our main inquiry should be whether discipline is justified. As previously noted, respondent has admitted to numerous violations of the disciplinary rules.

Clearly, respondent's neglect of legal matters coupled with his misrepresentations to clients would alone justify suspension and/or disbarment. *See In re Braggans*, 280 N.W.2d 34 (Minn.1979); *In re Johnson, supra; In re Streater, supra*. In addition, respondent has failed to cooperate with the LPRB, has made a false notarization, and has commingled personal and trust funds. Coupled with the fact that respondent has appeared before the LPRB on two prior occasions, there can be little doubt that disbarment and/or suspension is warranted.

Respondent has indicated that his neglect is due in large part to both mental and medical· problems. He states that he has problems with his "self-concept" and problems with food (he is overweight). He also states that he has a liver problem, which if untreated could be very serious. The record does not contain any evidence of the extent of his psychological or medical problems. However, even if these maladies are the cause of his conduct, disbarment or suspension is nonetheless warranted, if necessary to protect the public or the judicial system. *In re Wackerbarth*, 287 N.W.2d 651 (Minn.1979); *In re Streater, supra.*

Regardless of the court's decision regarding discipline, petitioner requests that this court appoint a trustee to review respondent's files and take appropriate action to protect respondent's clients. It should be noted that respondent has agreed to the appointment of a trustee.

This court's authority to appoint a trustee may be found in the court's inherent equitable powers over disciplinary matters or from Rule 15(b), Rules on Lawyers Professional Responsibility. Rule 15(b) provides as follows:

> *Protection of clients.* When a lawyer is disciplined or permitted to resign, this court may issue orders as may be appropriate for the protection of clients or other persons.

The usefulness of a trustee was recognized in the "Standards for Lawyer Discipline and Disciplinary Proceedings" as adopted by the ABA house of delegates in 1979. Section 13.1 of the standards provides as follows:

> *Appointment of Trustee.* Upon a showing that a lawyer is unable to properly discharge his responsibilities to his clients due to disability, disappearance or death, and that no arrangement has been made for another lawyer to discharge the responsibilities, the presiding judge in the judicial district in which the lawyer maintained his practice may appoint a lawyer to serve as trustee to inventory the files, sequester client funds and take whatever other action seems indicated to protect the interests of the clients and other affected parties.

Petitioner argues that this case compels the appointment of a trustee. Twice before respondent has agreed to voluntary supervision. However, neither supervision adequately protected respondent's clients, as evidenced by continued complaints. In light of these past failures, the appointment of a trustee appears to be a viable solution. Petitioner also requests that the trustee's costs, including a reasonable fee for his services, be paid by respondent. In granting petitioner's request, we find precedent

in *In re Loomis*, 90 Wash.2d 98, 579 P.2d 350 (1978).

In light of this record, we order the respondent's indefinite suspension. We direct the petitioner to make suitable arrangements with an attorney to act as trustee, to take such action on behalf of respondent's clients as may be necessary for their protection. We further order that the respondent cooperate fully with said trustee, and pay such expenses and compensation as may be necessary for the accomplishment of required services.

We retain jurisdiction pending a report of the trustee upon the completion of his duties.

The request by petitioner for costs and disbursements in the amount of $500 is hereby awarded.