In the Matter of the Application for the DISCIPLINE OF Lynnel L. JONES, an Attorney at Law of the State of Minnesota.

No. C7–85–2010.

Supreme Court of Minnesota.

March 14, 1986.

William J. Wernz, Betty M. Shaw, St. Paul, for appellant.

Lynnel J. Jones, Minneapolis, for respondent.

## PER CURIAM.

After receiving several complaints alleging respondent Lynnel L. Jones had acted unprofessionally in violation of the Code of Professional Responsibility, the director of Lawyers Professional Responsibility served charges upon her. Respondent failed to appear at a scheduled pre-hearing conference or a subsequently scheduled hearing before a panel of the Lawyers Professional Responsibility Board (LPRB). The board determined probable cause existed for public discipline, and served a petition for disciplinary action upon her. Respondent Jones failed to answer the petition. By her failure to answer, the allegations of the peti-

tion for disciplinary action were deemed admitted.[1] The matter comes before us to impose the discipline deemed appropriate in light of the admitted facts.[2]

Ms. Jones was admitted to practice law in May 1981. Later that same month, she signed a promissory note for a $17,000 loan from Dennis Johnson. She represented to him that she had a vendor's interest in a contract for deed. As security for the loan, she drafted and furnished him a document which she then knew was legally insufficient to provide any security for the loan. Subsequently, without Johnson's knowledge or permission, respondent transferred her vendor's interest in that contract for deed to a third party. In 1983, upon default in payment of the note given him by respondent, Johnson sued for payment.

In her answer to his complaint, Ms. Jones contended the loan was a gift. She further stated the promissory note and the purported security were intended merely to mislead Johnson's wife and the Production Credit Association of Faribault from which Johnson had borrowed the money to lend to respondent. Thus, respondent not only unprofessionally misrepresented to Johnson the legal validity of the purported security instrument, but also effectively deprived him of any chance to recoup the loan. By alienating whatever right she had in the underlying contract for deed, she effectively barred him from the remedy of reformation of the defective document and foreclosure on it. She compounded this deception by pleading the loan was a gift and allegedly admitting her complicity in defrauding Johnson's wife and the Production Credit Association. Throughout this whole transaction, she clearly evinced her disdain for honesty and fair dealing expected of an attorney at law in professional and busi-

---

1. Throughout this procedural period from June 1985 to date, respondent has cavalierly refused to participate in the investigation, probable cause hearing, or proceedings for public discipline before this court. By letters addressed to the board and to this court, she clearly manifested an intent to refuse to partake in the proceedings, and informed both the board and this court that she was not practicing law and had moved from the state.

2. The allegations contained in the petition are deemed admitted because of respondent's refusal to participate in these proceedings, specifically, her failure to answer the petition. *See* Rule 13(c), Rules on Lawyers Professional Responsibility (RLPR).

ness dealings. She exhibited a crass willingness to exploit her legal professional training and abilities to her own benefit, and to the detriment of those who placed confidence in her as a professional attorney at law. These actions violated DR 1-102(A)(4), (5), and (6), Minn.Code Prof.Resp. (MCPR).

In 1982, respondent prepared and recorded for her client Karen Jackson a quit claim deed which omitted the lot number from the legal description. The omission created a cloud on the title of other owners of property in that block. In 1985, an attorney, representing a homeowner on the block, learned the omission of the lot number created a cloud on the title of land his client was trying to sell. When he requested that respondent correct the error in the quit claim deed she had drafted and filed, respondent categorically refused to do so. She advised the attorney that if he wanted the description corrected, he should do it himself since it would cost him more to legally compel her to correct her own error than if he did it himself. Although the attorney was ultimately able to secure documents from third parties which would allow him to complete his client's real estate transaction, the inaccurate quit claim deed will continue to create a cloud on the title of other property owners in that block. A careful lawyer, of course, normally would have discovered the omission before recording the deed. However, it is not unheard of for such errors to occasionally occur. The original error, even if done negligently, is not the cause of public discipline. Rather, it is respondent's defiant refusal to correct the error that violates disciplinary rules. DR 1-102(A)(5) and (6), DR 6-101(A)(2), and DR 7-102(A)(3), MCPR.

Resa L. Olson was a party in a marriage dissolution action. Originally she was represented by attorney James Beal. During the course of the action, Beal terminated his representation, and filed an attorney's lien against Ms. Olson's non-homestead property. Respondent Jones succeeded Beal in representing Ms. Olson. The court's order in the dissolution provided that the attorney's lien be paid in full, and

recited that respondent Jones had agreed to retain $7,000 from the property settlement in her professional trust account until a release of Beal's lien had been obtained. Mr. Beal refused to release the lien when respondent tendered him only one-half of the amount he claimed was owed him. Notwithstanding the court's order, respondent failed to escrow the money belonging to Beal in violation of DR 1-102(A)(5) and (6) and DR 7-106(A), MCPR.

In 1981, A.J. Remmen had an interest in a corporation. Three of respondent's clients had claims against the corporation, but not against Remmen individually. Notwithstanding that respondent knew her clients had no valid claims against Remmen personally, she filed an involuntary bankruptcy petition against Mr. Remmen. Respondent failed to act in good faith. By filing the known illegal petition, she violated DR 1-102(A)(5) and (6), DR 6-101(A)(1) and (2), and DR 7-102(A)(1), MCPR.

Shortly thereafter, respondent, in blatant violation of the statutory stay of legal collection procedures found in the bankruptcy law, filed suit in the Hennepin County District Court against A.J. Remmen and others on behalf of not only her three clients in the bankruptcy matter, but also 13 other alleged creditors of Remmen. Thirteen of the sixteen parties on whose behalf respondent filed the suit had not given respondent permission to commence such an action and, in fact, were unaware that she had done so. Respondent's conduct in filing the Hennepin County District Court action in violation of the bankruptcy court's automatic stay violated DR 7-102(A)(1) and DR 7-106(A), MCPR. Her filing of a lawsuit on behalf of 13 persons without their authorization, knowledge or consent violated DR 1-102(A)(4), (5), and (6) and DR 7-102(A)(1), MCPR.

In the foregoing bankruptcy and Hennepin County District Court actions, respondent signed all the legal pleadings under the name "Legal Services, P.A." In fact, she had failed to register the corporation with the secretary of state, and omitted to

file appropriate papers with the Minnesota Board of Professional Responsibility, both required by law. While knowing she had not complied with these requirements, respondent nevertheless testified under oath in a hearing before Bankruptcy Judge Owens that "Legal Services, P.A." had been properly incorporated. Respondent's avowal that she had duly registered her alleged professional corporation with the State of Minnesota when she had not violated DR 1–102(A)(4), (5), and (6), DR 2–105(A), and DR 7–102(A)(5), MCPR.

Respondent represented Mrs. Robert Sheeley in a marital dissolution. At all times respondent knew attorney Timothy Dunn was representing Mr. Sheeley. In fact, respondent had granted Dunn an extension of time in which to answer the dissolution petition. Nevertheless, completely disregarding her grant of extension of time to answer and knowing the dissolution action was contested, respondent filed a default note of issue with the court and obtained a default hearing date. Moreover, she failed to notify Dunn she had filed the default note of issue or of the hearing date. From other sources, Dunn learned of the scheduled default hearing. He managed to get respondent to cancel the default hearing, after which he served and filed an answer and counter-petition, and later a contested note of issue. Subsequently, after Dunn had rejected a proposed marital termination agreement which respondent had drafted and submitted to him, respondent, notwithstanding the absence of a stipulated settlement, and while knowing the matter was contested, again filed a default note of issue and obtained a default hearing date. Once again, she failed to inform Dunn of these actions. Eventually the case was settled. However, the acts of respondent in filing default notes of issue on two separate occasions without notice to opposing counsel when she knew the matter was contested, violated DR 1–102(A)(4), (5), and (6) and DR 7–102(A)(5), MCPR.

■ An attorney is under the ethical duty to cooperate in the investigation and resolution of complaints of unprofessional and unethical conduct. *In re Cartwright,* 282 N.W.2d 548 (Minn.1979). Respondent's attitude in refusing to cooperate in these proceedings is almost contemptuous. Her refusal violated DR 1–102(A)(5) and (6), MCPR, and Rule 8.1(A)(3), Rules of Professional Conduct, and Rule 25, RLPR.

■ In determining appropriate discipline, we consider the nature of the ethical violations, the specific acts committed, any risk the public may be harmed if counsel is permitted to continue in the profession, and the preservation of the integrity of the bar as well as the system for the administration of justice. *See, e.g., In re Agnew,* 311 N.W.2d 869 (Minn.1981). In a short professional career, respondent has amassed a record of serious ethical violations. In order to protect the integrity of the legal profession and, even more importantly, to protect the public from the risk of future harm, respondent's disbarment is mandated.

During this short career, respondent has engaged in a pattern of misrepresentation. At the very commencement of her practice, she defrauded her friend, Dennis Johnson, or his wife and a lender. By her own court admission, she drafted legal documents for the purpose of misleading others, and used her legal skills for fraudulent purposes.

Nor was this the sole instance of misrepresentation. In 1981, before a U.S. bankruptcy judge, respondent falsely testified under oath that she had duly registered her professional corporation with the State of Minnesota. A month later, she filed a default note of issue in a marital dissolution action while knowing she had granted opposing counsel an extension of time in a contested matter. That this was not the inadvertent act of an inexperienced practitioner is confirmed by the fact that several months later, in this same action, she once again filed a default note of issue knowing that the matter was contested for trial.

In and of themselves, such acts of misrepresentation may be sufficient to warrant disbarment. Upon admission to the practice of law, an attorney takes an oath

to represent clients honestly and without deceit. The public relies upon the integrity of the judicial system, and it, in turn, relies completely on the honesty and integrity of the lawyers. We have not hesitated to disbar attorneys for failure to maintain the profession's high standards of truthfulness. *See In re Miller*, 199 Minn. 295, 271 N.W. 593 (1937); *In re Bresky*, 171 Minn. 490, 214 N.W. 666 (1927). *See also In re Peterson*, 260 Minn. 339, 110 N.W.2d 9 (1961).

In addition, exhibiting these acts of dishonesty and deceitfulness, respondent has engaged in conduct that interfered with the administration of justice. In 1981, respondent undertook representation of clients in a bankruptcy matter of some complexity. In view of her inexperience, she probably possessed insufficient competence to handle the matter. However, she not only failed to associate with more experienced counsel, but also filed two fraudulent lawsuits—one in bankruptcy court and one in Hennepin County District Court.

In both suits, actions were commenced against a party whom she knew was not personally a debtor of the clients she claimed to represent. The Hennepin County suit was filed not only in blatant disregard of the bankruptcy court's automatic stay, but also on behalf of 13 alleged creditors most of whom neither knew about nor consented to her filing on their behalf. She further evidenced her utter disdain for her professional responsibility in the administration of justice by her refusal to correct her error of omission in drafting a quit claim deed that created a cloud on the titles of lands owned by third parties.

Every licensed attorney at law has the ethical duty to cooperate in the investigation and resolution of complaints alleging unethical conduct. Failure to meet this obligation, in and of itself, may result in public discipline. *In re Cartwright*, 282 N.W.2d 548 (Minn.1979). By refusing to participate in the investigation of these complaints, respondent not only has violated that duty, but has arrogantly demonstrated her scorn for the ethical precepts of this profession and its disciplinary process.

Admittedly, each charge, taken in isolation, might be insufficient to form a basis for the imposition of severe public discipline. However, respondent has engaged in a wide range of disciplinary rule violations commencing almost immediately following her admission until at least the institution of these proceedings in 1985. Here, we can reach no other conclusion than that the cumulative weight and severity of these disciplinary rule violations compel disbarment. *See In re Agnew*, 311 N.W.2d 869 (Minn.1981). *See also In re Serstock*, 316 N.W.2d 559 (Minn.1982).

■ Although announcing she would not participate in further disciplinary proceedings, respondent, by letter to the director of Lawyers Professional Responsibility, offered, in effect, to resign from the practice of law in this state.[3] A lawyer's offer to resign without admission of wrongdoing has long been denied by this court when serious charges are pending, which, if true, would merit onerous public discipline. Thus, we recently stated:

> This court has repeatedly held that resignation is not an effective deterrent to other future legal misconduct. Where discipline (disbarment or suspension) is justified, it must follow. *See In re Johnson*, 290 N.W.2d 604 (Minn.1980); *In re Hetland*, 275 N.W.2d 582 (Minn.1978); *In re Streater*, 262 Minn. 538, 115 N.W.2d 729 (1962).

*In re Peck*, 302 N.W.2d 356, 360 (Minn. 1981).

Repeated and admitted violations of respondent's duty to clients and the public, in the administration of justice, merit disbarment.

It is so ordered.

---

3. The offer was reiterated by respondent in a letter addressed to this court dated January 19, 1985.