In re Petition for DISCIPLINARY AC-
TION AGAINST Chester C. GRAHAM,
an Attorney at Law of the State of
Minnesota.

No. C4-86-1715.

Supreme Court of Minnesota.

March 10, 1989.

Chester C. Graham, Cross Lake, for appellant.

William J. Wernz, Thomas C. Vasaly, St. Paul, for respondent.

PER CURIAM.

Respondent Chester C. Graham was admitted to practice law in Minnesota in 1983. In October 1986, he was publicly reprimanded by this court and placed on 2 years' supervised probation for neglect of a real estate matter. In April 1988 the Director of the Office of Lawyers Professional Responsibility filed a petition for revocation of respondent's probation and further discipline. Respondent answered but later did not respond to an amended petition alleging additional misconduct. Respondent's failure to answer, along with his absence from the prehearing conference and failure to respond to discovery requests and orders, resulted in the allegations of the amended petition being deemed admitted.

Respondent appeared pro se at the referee's hearing but subsequently declined to submit a written brief to the referee or to file a brief with this court. Neither party ordered a transcript of the hearing; hence, the referee's findings of fact and conclusions of law are conclusive. Minn.R.Prof. Resp. 14(e).

In addition to the 1986 probation order, respondent has also received two admonitions. The first, received in February 1985, was issued for neglect of a client matter, misrepresentation to the client, and failure to seek advice of experienced counsel. During respondent's probation in 1987 he received a second admonition for failing to cooperate with a disciplinary investigation stemming from a client complaint.

Respondent's current misconduct reflects a continuing pattern of neglect and non-cooperation. The most serious of the eight counts of misconduct involves the neglect of a bankruptcy matter. Respondent agreed to represent William and Bonita Tell in a Chapter 11 bankruptcy designed to protect a building lease which they were subletting profitably. After an order for relief was issued, respondent had 60 days to file an assumption of the lease, yet, despite a letter from opposing counsel reminding him of the time limitation, he neglected to do so. Respondent did eventually file a motion to allow the Tells to assume

the lease but it was denied on procedural and substantive grounds. The Tells lost the lease and were forced to convert the bankruptcy to a Chapter 7 proceeding. Throughout respondent's mishandling of the Tell bankruptcy he failed to communicate with his clients, and he also improperly received a $1,000 retainer in contravention of a Chapter 11 rule which subjects attorney fees to court approval.

Respondent also represented Dorothy Coley in a bankruptcy proceeding. In that case he did not attend the pretrial conference, and he ignored a pretrial order to file witness and exhibit lists and proposed findings or conclusions. Subsequently the court issued an order for trial requiring the parties to confer, stipulate to the admissibility of exhibits and depositions, file trial briefs, and file final lists of exhibits, witnesses and depositions. Respondent ignored the order and failed to appear at trial. He was fined $150.

The remainder of respondent's misconduct involving client matters concerns his neglect of estate files. Three of the estates still remained open as of the date of the referee's hearing on August 24, 1988.

In August 1986 respondent was appointed guardian of the estate of Edward Borg and conservator of the estate of Bertha Borg. While serving as guardian, he neglected to pay Mr. Borg's nursing home bill and withdrew $3,800 from the estate as attorney fees without court approval. He hired attendants to care for Mr. Borg and appropriately withheld social security taxes from their paychecks but spent the money on other estate matters, leaving him unable to transmit the funds to the Internal Revenue Service. After the estate funds were exhausted, respondent paid the attendants with checks drawn on nonsufficient funds. He also failed to apply for Mr. Borg's medical assistance benefits on time. Finally, respondent failed to comply with a court order to file a final account on the Borg estates and was relieved of his duties. He was eventually found to be in contempt, fined $200, and ordered to file the final account within 30 days. The account was submitted over 2 months later.

In another estate matter, respondent was appointed successor personal representative of the estate of Esther Cadotte in 1985. He has ignored two letters from the court directing him to proceed, and the estate remained open on August 24, 1988.

Respondent is also the attorney for the administrator of the Barbara Gottsch estate. After repeated requests by the court, he finally filed an inventory, but he has continued to ignore the court's instructions to complete the probate.

Then, again, as attorney for the administrator of the estate of Paul H. Swanson, respondent unnecessarily delayed filing the petition for appointment of the administrator 3 months, filed the inventory 4 months late, and continues to ignore requests by the court, his client, and the estate's devisee to complete the probate.

In addition to the above misconduct, respondent has continued to practice law after being suspended on April 1, 1988, for nonpayment of his attorney registration fee.

In April 1988, the Director's office asked respondent to reply to complaints concerning his management of the Cadotte, Gottsch, Swanson, and Coley files. Respondent did not reply. He has failed to cooperate with the Director's office in this proceeding, although he did appear for the referee's hearing.

At the referee's hearing, respondent testified that he has been an alcoholic for about 20 years and has psychological problems, but he offered no independent evidence or expert testimony to support his testimony. The referee found that respondent's psychological problems, apart from his alcoholism, made him incapable of practicing law at the time. The referee concluded that although respondent suffers from alcoholism and psychological problems, the evidence was insufficient to establish these problems as mitigating factors. *See In re Johnson*, 322 N.W.2d 616, 618 (Minn.1982) (proof of alcoholism as a mitigating factor); *In re Weyhrich*, 339 N.W.2d 274, 279 (Minn.1983) (psychological problems).

Respondent's misconduct has spanned the duration of his legal career. Since his admission in 1983 he has been admonished twice, publicly reprimanded, and placed on supervised probation. Nevertheless, respondent's misconduct has continued, even while under probation, leading the referee to accept the Director's initial recommendation of an indefinite suspension with at least a year's wait before any application for reinstatement.

This court places great weight on a referee's recommendation but it alone has the final responsibility to determine the appropriate discipline. *In re Franke,* 345 N.W. 2d 224, 228 (Minn.1984). The Director now takes the position before this court that respondent's minimum suspension should be longer than 1 year. The Director believes that respondent's continued noncooperative attitude since his appearance at the August 1988 hearing justifies an indefinite suspension with no right to seek reinstatement for 3 years.

The purpose of attorney discipline is not to punish the attorney but to protect the courts, the public and the profession and to guard the administration of justice. *In re Peck,* 302 N.W.2d 356, 359 (Minn.1981). Clearly, protection is needed in this case because respondent's conduct has been completely frustrating to the courts before which he has appeared and to the clients he has undertaken to represent. It is important, too, since there is no indication that respondent has mended his ways, that future misconduct be deterred. *See In re Weyhrich,* 339 N.W.2d at 279. Respondent's continued neglect of files, disregard of court orders, and noncooperation despite his probation warrant an indefinite suspension.

ACCORDINGLY, IT IS ORDERED:

(1) That respondent be indefinitely suspended from the practice of law;

(2) That he not be reinstated except upon compliance with the requirements of Minn. R.Prof.Resp. 18;

(3) That he may not submit a petition for reinstatement until a period of at least 18 months has elapsed from the date of this order; and

(4) That prior to submitting a petition for reinstatement, respondent shall:

a. Obtain psychological or psychiatric treatment, and provide to the Director's office a report of a comprehensive psychological evaluation, together with signed authorizations for release of information as requested by the Director;

b. Maintain sobriety and participate in Alcoholics Anonymous or other appropriate program; and

c. Work in a "paralegal" or similar position under the supervision of an attorney for a period of time to demonstrate that he is capable of practicing law competently and responsibly, and that he is psychologically healthy.