In re Petition for DISCIPLINARY AC-
TION AGAINST Carl Anton KNUT-
SON, a Minnesota attorney, Registra-
tion No. 289917.

No. A05–808.

Supreme Court of Minnesota.

April 6, 2006.

Carl Anton Knutson, pro se respondent.

Thomas F. Ascher, Asst. Director, Office of Lawyers Professional Responsibility, St. Paul, for petitioner.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility has petitioned us to take disciplinary action against attorney Carl Anton Knutson, alleging that Knutson neglected client matters, made misrepresentations to clients about his neglect, failed to pay a professionally incurred debt, failed to return client files, instructed clients to lie to the court, and failed to cooperate with the associated disciplinary proceedings in violation of Minn. R. Prof. Conduct 1.2(c), 1.3, 1.4, 1.5, 3.3(a), 3.4(c), 4.1, 8.1(a)(3), 8.4(a), 8.4(c), and 8.4(d),[1] and Rule 25, Rules on Lawyers Professional Responsibility (RLPR).[2] Knutson has not responded to the allegations; as a result, the allegations are deemed admitted. Rule 13(b), RLPR. The sole issue before this court is the appropriate sanction to impose. The director requests that Knutson be suspended indefinitely, such suspension lasting for a minimum of 18 months before Knutson is permitted to seek reinstatement.

Knutson's misconduct reflects a pattern of neglect and noncooperation. In April 2003 R.B. hired Knutson to incorporate a trucking business on his behalf. R.B.'s wife, J.B., met with Knutson on April 23, paid Knutson $242, and gave Knutson the information he needed to accomplish the incorporation. Knutson told J.B. that the incorporation would take four to six weeks. After repeated attempts in early June, J.B. finally managed to contact him. Knutson told J.B. that the Secretary of State's office had rejected the incorporation papers because the business name R.B. desired was already claimed. Knutson assured J.B. that the incorporation would be completed in about two weeks. Near the end of June, Knutson told J.B. that the business had been incorporated, and he would send her a copy of the incorporation documents. J.B. contacted Knutson again when she did not receive the incorporation documents. Knutson told her that the papers had not been sent because his secretary had quit, but that he would send J.B. the papers. It was later discovered that Knutson never had a secretary during the time of his dealings with J.B. and R.B. Knutson never filed any incorporation documents on their behalf. J.B. later decided to personally incorporate the business.

In February 2003, C.C. hired Knutson to file a bankruptcy petition, and paid Knutson a retainer of $1,200 for his services. In May 2003, C.C. moved to Texas; at that time C.C.'s home was in foreclosure, but Knutson had not filed any papers on the bankruptcy matter. In July, C.C.'s wife tried several times without success to contact Knutson about the bankruptcy matter. When C.C. finally managed to reach Knutson, Knutson assured C.C. on more than one occasion that he was planning to schedule a court date for the bankruptcy and promised to contact C.C. with the date. In fact, no such hearing could even

---

1. Citations are to the Minnesota Rules of Professional Conduct as they read prior to the amendments that took effect Oct. 1, 2005. 14 Minn.Stat. 1379 *et. seq.* (2004) (amended June 17, 2005, eff. Oct. 1, 2005).

2. 14 Minn.Stat. 1462 (2004) (amended Aug. 10, 2005, eff. Sept. 1, 2005).

have been scheduled, as Knutson had not filed and never did file a bankruptcy petition on behalf of C.C. Knutson never took any action on C.C.'s case, never withdrew from his representation of C.C., never returned C.C.'s file, and never returned C.C.'s retainer. Furthermore, Knutson advised C.C. to tell the bankruptcy court that C.C. was merely visiting Texas as opposed to residing there. Knutson knew that this would have been a misrepresentation to the bankruptcy court, as C.C. was in fact residing in Texas.

The third matter Knutson neglected was that of L.R. In 2004 L.R. retained Knutson for a bankruptcy matter, and Knutson filed a bankruptcy petition for her on April 8, 2004. L.R. later notified Knutson that there were some creditors who had not been included on the petition and needed to be added. Knutson asked the court for time to amend the petition, which was granted; however, Knutson never did amend the petition. Additionally, L.R. informed Knutson that Knutson had incorrectly listed the amounts of certain debts on the petition; instead of amending the petition, Knutson instructed L.R. to tell the court that the debt amounts were correct.

L.R. attempted without success to contact Knutson over the next few months to ascertain whether Knutson had amended the bankruptcy petition to include the overlooked creditors. On July 7, 2004, the bankruptcy court entered an order granting L.R.'s discharge—presumably under the incomplete and incorrect petition. L.R. continued to attempt to contact Knutson, but Knutson never returned her calls or provided her with copies of her bankruptcy documents. Because of Knutson's neglect, L.R. continued to receive collection calls from the overlooked creditors; to correct the situation, she faced the pros-

pect of having to reopen the bankruptcy matter.

Knutson also failed to pay a professionally incurred debt, even after judgment was entered against him. On September 17, 2003, John R. Hoffman & Associates provided mediation services to Knutson and billed Knutson $625. After making repeated, unanswered requests for payment, Hoffman sued Knutson to collect the $625. On March 16, 2004, judgment was entered for Hoffman and against Knutson in the amount of $625. Hoffman served Knutson with a financial disclosure form as part of an attempt to enforce the judgment. Knutson did not complete and file the form. Knutson was then served with an order to show cause, with instructions to appear at the Hennepin County clerk's office on July 26 at 9:30 a.m. Knutson did not appear, which resulted in a finding of contempt. Knutson finally sent partial payment to Hoffman on August 25, and sent the rest of the payment to Hoffman on September 2. Despite his failure to pay the debt for nearly a year, Knutson never disputed either the existence or the amount of the debt, and never responded to Hoffman's requests for payment.

Finally, Knutson has failed to cooperate with the disciplinary process. Despite the director's repeated attempts to contact Knutson and obtain explanations for his misconduct, Knutson has failed to provide an explanation for his actions or fully respond to the director's inquiries. On the occasions when Knutson did respond, he misled investigators with what proved to be false assurances of compliance. For instance, Knutson told the investigator that he intended to return J.B.'s $242 check, but then did not do so. On another occasion, Knutson requested a two-week extension to respond to the investigator's report regarding the J.B. complaint, but then never sent a response.

Knutson did appear at a prehearing meeting on September 21, 2004, wherein he offered some explanation for his actions and promised a written response within a week. However, Knutson never sent a written response, and did not appear at two subsequent prehearing meetings. Additionally, Knutson failed to appear at a February 3, 2004, panel hearing, and never sent any of the documents requested for the meeting, despite having left a voice mail message at the panel chair's office assuring the chair that Knutson had sent his "papers" to the director's office, and that he "looked forward to meeting with [the panel chair]."

The sole issue before the court is the appropriate discipline to impose. We impose discipline on attorneys for professional misconduct in order to protect the public, to protect the judicial system, and to deter future misconduct. *In re Oberhauser*, 679 N.W.2d 153, 159 (Minn.2004) (citing *In re Daffer*, 344 N.W.2d 382, 385 (Minn.1984)). We look to similar cases of misconduct for guidance as to the discipline to impose. *In re Brooks*, 696 N.W.2d 84, 88 (Minn.2005). But discipline is imposed case-by-case after consideration of both aggravating and mitigating circumstances. *Oberhauser*, 679 N.W.2d at 159 (citing *In re Koss*, 611 N.W.2d 14, 16 (Minn.2000)). In determining the appropriate sanction to impose, we consider (1) the nature of the misconduct, (2) the cumulative weight of violations of the rules of professional conduct, (3) the harm to the public, and (4) the harm to the legal profession. *Oberhauser*, 679 N.W.2d at 159 (citing *In re Singer*, 541 N.W.2d 313, 316 (Minn.1996)).

We have said that "an attorney's pattern of neglect and failure to communicate with clients, combined with failure to cooperate with a disciplinary authority's investigation, usually warrants an indefi-

nite suspension from the practice of law." *In re Campbell*, 603 N.W.2d 128, 132 (Minn.1999). An attorney's failure to attend a meeting prior to a panel hearing may provide an independent basis for suspension, and an attorney's failure to attend the hearing itself is at least as serious an infraction. *In re Thedens*, 557 N.W.2d 344, 350 (Minn.1997). Indefinite suspension is also a typical sanction for repeated instances of misrepresentations to clients. *See In re Westby*, 639 N.W.2d 358, 371 (Minn.2002). Additionally, advising a client to lie under oath is a serious offense, as "[o]ur legal system depends on the truthfulness of the testimony of witnesses." *See In re Ward*, 563 N.W.2d 70, 72 (Minn.1997) (quoting *In re Salmen*, 484 N.W.2d 253, 254 (Minn.1992)). Lack of a previous disciplinary record is a mitigating factor, *see In re Benson*, 431 N.W.2d 120, 122 (Minn.1988), but we determine that it is insufficient to overcome Knutson's numerous violations of professional responsibility.

Knutson has engaged in several types of misconduct on many different occasions, demonstrating a pattern of neglect of client matters that warrants an indefinite suspension. The length of the required minimum term of suspension is based on the consideration of the nature, number, and seriousness of Knutson's offenses. *See Oberhauser*, 679 N.W.2d at 159.

The director requests that Knutson be indefinitely suspended, citing for support *In re Jensen*, 418 N.W.2d 721 (Minn.1988), and *In re Kinnunen*, 502 N.W.2d 773 (Minn.1993), in which attorneys were indefinitely suspended with minimum suspension periods (one year for Jensen; 18 months for Kinnunen) for similar infractions to those at issue here. *See also In re Graham*, 436 N.W.2d 782, 782–83 (Minn. 1989) (attorney was indefinitely suspended for a minimum of 18 months for neglect of

client matters, receiving unauthorized fees, ignoring court orders, and failing to cooperate with the Office of Lawyers Professional Responsibility), and *In re Patrow*, 467 N.W.2d 323, 323 (Minn.1991) (18-month minimum suspension when Patrow neglected two clients' matters, made numerous misrepresentations to the clients, created a false court order that attorney then represented to be genuine to one client, a county case worker, and opposing counsel, and directed the issuance of a trust account check to a client when the client had no funds in Patrow's trust account, but cooperated with the Office of Lawyers Professional Responsibility).

We agree with the director's office that an 18–month minimum suspension period is warranted in this case because Knutson's misconduct placed two of Knutson's clients in especially difficult positions. As bankruptcy clients, they had little money to pay for attorney representation. Knutson took money from these clients, then neglected their matters, leaving them to attempt to navigate the difficulties of bankruptcy proceedings alone. The egregiousness of Knutson's noncooperation and the dishonesty Knutson has practiced towards his clients and the director also support an 18–month suspension. Accordingly, we hold that indefinite suspension with a minimum suspension of 18 months is the appropriate discipline.

Accordingly, it is ordered:

1. That Carl Anton Knutson is indefinitely suspended from the practice of law for a minimum of 18 months. The suspension, as ordered, shall commence 20 days after the date this opinion is filed. Knutson may apply for reinstatement after said 18–month period;

2. That Knutson shall pay to the director the sum of $900 in costs and disbursements pursuant to Rule 24, RLPR;

3. That Knutson shall comply in all respects with Rule 26, RLPR;

4. That if Knutson seeks reinstatement, he shall also comply fully with Rule 18, RLPR;

5. That if reinstated, he shall be placed on supervised probation for a period of two years, with the terms and conditions of probation to be determined at the time of reinstatement.

So ordered.

GILDEA, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.