### In re Petition for DISCIPLINARY ACTION AGAINST Peter MAYRAND, a Minnesota Attorney, Registration No. 69206.

No. A04–1704.

Supreme Court of Minnesota.

Nov. 2, 2006.

---

Martin A. Cole, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for Appellant.

Peter Mayrand, Motley, MN, pro se.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) served a petition and two supplementary petitions for disciplinary action against Peter Mayrand. The petitions allege that Mayrand failed to communicate with clients, failed to provide an accounting of client funds upon request, failed to provide refunds to clients for unearned fees, failed to return files upon client requests, abandoned clients after accepting fees, failed to follow court orders and rules, lacked diligence in prosecuting cases, failed to timely file tax returns, overdrew his client trust account, and failed to cooperate with disciplinary proceedings. The Director alleges that Mayrand violated Rules 1.1, 1.3, 1.4, 1.15, 1.16(d), 3.2, 3.3(a)(1), 3.4(c), 4.1, 8.1(a)(3), 8.4(b)-(d), Minnesota Rules of Professional Conduct;[1] Rule 25, Rules on Lawyers Professional Responsibility (RLPR);[2] and Lawyers Professional Responsibility Board Opinion Nos. 13 and 15. The Director made many unsuccessful attempts to address these allegations with Mayrand.[3] On January 7, 2005, this court suspended Mayrand for one year and ordered that the allegations in the petitions be deemed admitted if Mayrand failed to appear in the matter within the year. Mayrand failed to appear. We deem the allegations admitted and agree with the Director that disbarment is warranted.

The misconduct at issue in this matter involves Mayrand's representation of eight clients. Mayrand represented R.C. on an appeal from a federal criminal conviction. R.C. paid Mayrand $15,000, which was never deposited into a trust account. Mayrand claimed it was a non-refundable flat fee, but there was no written fee agreement to that effect. Over the next several months, R.C. became dissatisfied with the progress of his appeal and Mayrand's lack of communication, causing R.C. to retain new counsel. Mayrand promised to account for the funds that R.C. had paid him and to return the unused balance. Mayrand never provided R.C. with an accounting or refund.

Mayrand agreed to represent D.C. on appeal from a federal criminal conviction to the United States Court of Appeals for the Seventh Circuit. Over the course of representation, Mayrand failed to submit the appellant's brief for one year and six months, missing a total of four court-imposed deadlines. The court sent a total of four orders directing Mayrand to show

---

1. Citations to the Minnesota Rules of Professional Conduct reflect the rules prior to the amendments that took effect on Oct. 1, 2005.

2. Citations to Rule 25, RLPR, reflect the rule prior to the amendment that took effect on September 1, 2005.

3. Mayrand did answer the original petition for disciplinary action on January 29, 2001, denying the allegations, but he did not offer any documentation or subsequent statements explaining those denials. The Director has made extensive efforts to locate Mayrand since the answer was filed but has not been successful.

cause why the court should not take disciplinary action for his failure to prosecute the appeal. Mayrand responded twice, stating that his client had been advised of and agreed with the use of Mayrand's "delaying tactic," but D.C. stated that he never consented. Mayrand finally submitted the brief, but the court found it deficient. Mayrand failed to resubmit the brief, resulting in another show cause order, to which Mayrand never responded. The Seventh Circuit finally struck Mayrand's name from its roll of attorneys, due to his failure to prosecute the appeal and respond to the latest show cause order. The court appointed alternative counsel to D.C.

J.H. retained Mayrand to represent her in a bankruptcy proceeding. He accepted $950, which he claimed was a flat fee pursuant to a retainer agreement, but he never produced a written agreement. J.H. had difficulty contacting Mayrand about her case for several months. When she met with Mayrand nearly a year later, he told her that he would file the bankruptcy case the next week and that discharge would occur within 5 weeks. J.H. learned later that what Mayrand told her was false. She sent Mayrand a certified letter, requesting that he return the fee and her file materials, but she never heard from him. J.H. never recovered her money or file.

P.L. paid Mayrand a $1,000 retainer for the purpose of collecting a debt owed P.L. from the proceeds of a property sale. Mayrand requested documents from the debtor 2 months later, but this is the last action Mayrand took on P.L.'s behalf. P.L. made numerous attempts to contact Mayrand over the next several months, including three times by regular mail, two times by certified mail, and many phone calls. P.L. never received a response and was forced to retain other counsel at additional expense.

M.M. retained Mayrand to represent him on a parole violation, paying a $1,500 retainer fee. Mayrand appeared at an initial hearing, where M.M. was released without bail, but M.M. was then unable to contact Mayrand regarding his parole violation hearing. A warrant was later issued for M.M.'s arrest, and he was still unable to contact Mayrand.

R.R. retained Mayrand to represent M.H. Throughout the course of representation, Mayrand appeared in court twice on M.H.'s behalf, but he failed to file forfeiture papers for personal property seized by the police, despite assuring R.R. that the papers had been filed. After learning that the papers were not filed, R.R. left numerous messages for Mayrand, but he never returned the calls. R.R. also requested that Mayrand obtain a copy of a search warrant, but Mayrand again failed to return her calls. Mayrand orally notified R.R. of his withdrawal from the case, without ever sending a letter to either M.H. or R.R. to that effect. R.R. had arranged for Mayrand to receive a total of $8,400 prior to his withdrawal. Mayrand did not refund any of this money.

Mayrand agreed to represent G.C. on driving under the influence charges and in a civil forfeiture proceeding. Mayrand appeared at several hearings on G.C.'s behalf, but he then withdrew as counsel. G.C. twice sent Mayrand a letter requesting the return of his file, but he never heard from Mayrand after the withdrawal.

C.G. retained Mayrand to represent him in both a forfeiture matter and an implied consent matter, and paid him $5,000 for the representation. Mayrand failed to respond to C.G.'s numerous phone inquiries regarding his hearings. The opposing attorney in the forfeiture matter filed a motion for summary judgment, but Mayrand

failed to file responsive documents at least 9 days before the summary judgment hearing, pursuant to Minn. Gen. R. Prac. 115.03(b). When Mayrand did file a response, one day before the hearing, it was only one paragraph long and violated the requirements of Minn. Gen. R. Prac. 115.03(d). The court granted the motion for summary judgment, partially due to Mayrand's violation of the practice rules. C.G.'s vehicle, consequently, was forfeited.

■ The Director alleges, and we agree, that Mayrand committed several violations of the Minnesota Rules of Professional Conduct in his representation of the clients discussed above. Mayrand violated Rule 1.1 (competence) in his representation of C.G. for failing to follow the minimum requirements required by court rules.[4] He violated Rules 1.3 (diligence) and 1.4(a) (communication) in his representation of R.C., D.C., J.H., P.L., M.M., M.H., and C.G. for lack of diligence in addressing their cases, abandoning them without reaching a resolution, and repeatedly failing to respond to client phone calls and questions.[5]

■ Mayrand violated Rules 4.1 (truthfulness in statements to others) and 8.4(c) (dishonesty) for lying to R.C., D.C., J.H., and R.R. (on behalf of M.H.) in connection with their matters.[6] Mayrand also violated Rule 3.3(a)(1) (false statement to a tribunal) in the D.C. matter by misrepresenting to the court that he acted with D.C.'s consent in delaying the case.[7]

■ Mayrand's failure to return J.H. and G.C.'s files upon their request violated Lawyers Professional Responsibility Board Opinion 13 (return of client files).[8] Mayrand violated Rule 1.15(b) (withdrawal of earned fees from trust account and accounting of client funds) and Board Opinion 15 (placement of advanced fees in trust account) by failing to place retainer fees from R.C. and J.H. into a client trust account, failing to draw money only when earned, and failing to provide R.C. with an accounting.[9] Mayrand also violated Rule 1.16(d) (protection of client's interests at termination of representation) by failing to

---

4. "A lawyer shall provide competent representation to a client." Minn. R. Prof. Conduct 1.1.

5. "A lawyer shall act with reasonable diligence and promptness in representing a client." Minn. R. Prof. Conduct 1.3.

"A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Minn. R. Prof. Conduct 1.4(a), 14 Minn.Stat. 1386 (2004) (amended June 17, 2005).

6. "In the course of representing a client a lawyer shall not knowingly make a false statement of fact or law." Minn. R. Prof. Conduct 4.1.

"It is professional misconduct for a lawyer to:
* * *
(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation[.]" Minn. R. Prof. Conduct 8.4(c).

7. "A lawyer shall not knowingly:

(1) make a false statement of fact to a tribunal[.]" Minn. R. Prof. Conduct 3.3(a)(1), 14 Minn.Stat. 1414 (2004) (amended June 17, 2005).

8. "A lawyer may not condition the return of client files * * * upon payment of the lawyer's fee." Lawyers Prof. R. Board Opinion 13.

9. "A lawyer must withdraw earned fees * * * from the trust account within a reasonable time after the fees have been earned * * *, and the lawyer must provide the client * * * with * * * an accounting of the client's * * * funds * * *." Minn. R. Prof. Conduct 1.15(b).

"All advance fee payments must be deposited into an interest bearing trust account * * *." Lawyers Prof. R. Board Opinion 15.

communicate with G.C. and failing to return files after Mayrand withdrew from the representation.[10]

█ By missing deadlines and failing to respond to the Seventh Circuit's show cause orders in the D.C. matter, Mayrand violated Rule 3.2 (effort to expedite litigation).[11] Mayrand violated Rules 3.4(c) (disobeying obligation imposed by court) and 8.4(d) (conduct prejudicial to the administration of justice) in the D.C. and C.G. matters by disobeying court rules and orders.[12]

█ In addition to his misconduct in connection with client representation, Mayrand failed to timely file his personal state and federal income tax returns for 1997 and 1998. He also failed to file quarterly unemployment tax returns for most quarters, dating back to 1991. He accrued past due unemployment taxes, penalties, and interest totaling $3,768. Mayrand's failure to pay taxes violated Rule 8.4(b) (criminal act reflecting on a lawyer's honesty).[13] See also In re Bunker, 294

Minn. 47, 50–54, 199 N.W.2d 628, 630–32 (1972) (holding that a failure to file federal or state income tax returns violates an attorney's oath of office and professional responsibility obligations). Mayrand also had a $70 overdraft from his client trust account. The account was later closed because the shortage was not covered. Mayrand's client trust account overdraft violated Rule 1.15 (safekeeping of client property).[14]

█ Finally, Mayrand failed to cooperate with the Director's disciplinary investigations. Mayrand did not respond to a total of 11 letter inquiries from the Director regarding the misconduct outlined above. He also twice failed to deliver documents regarding those matters after promising to do so. After receiving the original petition for disciplinary action, Mayrand cancelled two meetings to discuss the allegations. Mayrand filed an answer to the petition in January 2001, but that was the last contact he made with the Director. Mayrand has not responded to

10. "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned." Minn. R. Prof. Conduct 1.16(d), 14 Minn.Stat. 1408 (2004) (amended June 17, 2005).

11. "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Minn. R. Prof. Conduct 3.2.

12. "A lawyer shall not:

　* * *

(c) knowingly disobey an obligation under the rules of a tribunal[.]" Minn. R. Prof. Conduct 3.4(c).

"It is professional misconduct for a lawyer to:

　* * *

(d) engage in conduct that is prejudicial to the administration of justice[.]" Minn. R. Prof. Conduct 8.4(d).

13. "It is professional misconduct for a lawyer to:

　* * *

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects[.]" Minn. R. Prof. Conduct 8.4(b).

14. "All funds of clients or third persons held by a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable interest bearing trust accounts as set forth in [the following clauses]." Minn. R. Prof. Conduct 1.15(a).

"Every lawyer engaged in private practice of law shall maintain or cause to be maintained on a current basis, books and records sufficient * * * to establish compliance with [the preceding clauses]." Minn. R. Prof. Conduct 1.15(h).

this court's orders or participated in the proceedings before this court. Mayrand's refusal to cooperate with disciplinary inquiries and proceedings violated Rules 8.1(a)(3) (failure to respond to inquiry by disciplinary authority), 8.4(d) (conduct prejudicial to the administration of justice), and Rule 25, RLPR (cooperation with Director's investigation).[15]

 We turn next to the question of the appropriate discipline for Mayrand's violations. "Disciplinary sanctions for professional misconduct are imposed to protect the public and the judicial system, and to deter future misconduct." *In re Crandall*, 699 N.W.2d 769, 771 (Minn.2005). In determining the appropriate sanction for attorney misconduct, this court considers four factors: " '1) the nature of the misconduct, 2) the cumulative weight of the violations of the rules of professional conduct, 3) the harm to the public, and 4) the harm to the legal profession.' " *In re Oberhauser*, 679 N.W.2d 153, 159 (Minn.2004) (quoting *In re Singer*, 541 N.W.2d 313, 316 (Minn.1996)). While this court looks to similar cases for guidance, sanctions are determined on a case-by-case basis after examining the acts of misconduct and considering both aggravating and mitigating circumstances. *In re Wentzell*, 656 N.W.2d 402, 408 (Minn.2003).

The Director calls our attention to three analogous cases in which we disbarred attorneys. The Director first cites *In re Kaszynski*, where we disbarred the respondent for harming clients through incompetence, mishandling client matters, neglect, failure to communicate with clients, excessive fees, and a lack of diligence. 620 N.W.2d 708, 710 (Minn.2001). The respondent had been cited for 24 violations in 4 years. *Id.* His pattern of misconduct included collecting fees for work that was never done, failing to refund excess fees upon request, continually failing to return client phone calls, and failing to keep clients informed regarding their proceedings. *Id.* at 711. In addition, the respondent failed to withhold state and federal employer taxes and had shortages of up to $5,771 in his client trust account. *Id.* at 712. We disbarred the respondent due to the cumulative weight and severity of the disciplinary rule violations. *Id.* at 714.

The Director also cites *In re Walker* as an analogous case, where we disbarred the respondent for "numerous individual violations, any one of which would warrant serious discipline." 461 N.W.2d 219, 223 (Minn.1990). The respondent engaged in a pattern of neglect after accepting fees in advance of services. *Id.* at 220–21. During representation, the respondent was dishonest with clients regarding his progress in cases and failed to keep clients abreast of scheduled hearing dates. *Id.* The respondent also failed to return files and unearned fees at the end of representation. *Id.* at 221. One client had a case dismissed with prejudice as a consequence of the respondent's failure to notify the client of court-imposed orders and fees. *Id.* Finally, the respondent failed to respond to the Director's ethics complaints against him, leading the Director to be-

---

**15.** "[A] lawyer * * * in connection with a disciplinary matter, shall not:

* * *

(3) knowingly fail to respond to an admission or disciplinary authority's lawfully authorized demand for information * * *." Minn. R. Prof. Conduct 8.1(a)(3), 14 Minn. Stat. 1432 (2004) (amended June 17, 2005).

"It shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with * * * the Director * * * by complying with reasonable requests * * *." Rule 25(a), RLPR, 14 Minn. Stat. 1462 (2004) (amended Aug. 10, 2005).

lieve the respondent abandoned his law practice. *Id.* at 222.

The Director also calls our attention to *In re Jones*, where we disbarred the respondent due to the "cumulative weight and severity" of her disciplinary rule violations. 383 N.W.2d 303, 307 (Minn.1986). During her representation of five clients, the respondent fraudulently drafted legal documents to swindle her lender out of money, disobeyed a court order by failing to escrow money belonging to a client's previous attorney, and knowingly filed a meritless bankruptcy petition under the name of a fictitious corporation, falsely representing to the court that the corporation was registered. *Id.* at 304–06. In addition, the respondent initially refused to participate in disciplinary proceedings and later attempted to resign from the practice of law. *Id.* at 306–07. We refused to accept her resignation without an admission of wrongdoing and disbarred her. *Id.* at 307.

We agree with the Director that these cases indicate disbarment is the appropriate sanction for Mayrand. As in *Kaszynski*, *Walker*, and *Jones*, the cumulative weight of Mayrand's conduct warrants severe discipline. The nature of Mayrand's misconduct strikes at the heart of the attorney-client bond. Mayrand has harmed multiple clients over many years, and his behavior has harmed the legal profession.

In addition to Mayrand's many rule violations, he has two serious aggravating factors, prior disciplinary history and failure to cooperate with the disciplinary process, both of which weigh in favor of disbarment. Regarding his disciplinary history, we have recognized that "[a]n attorney's prior disciplinary history is relevant when determining sanctions." *In re Gherity*, 673 N.W.2d 474, 480 (Minn.2004). Prior to the misconduct underlying this proceeding, Mayrand received an admoni-

tion for neglecting a legal matter, failing to promptly deliver a file to a client's new attorney, and failing to fully and promptly cooperate with the corresponding disciplinary investigation. Mayrand was also placed on private probation for 2 years for multiple driving while intoxicated offenses, driving without a driver's license, and practicing law after his license was suspended for failing to pay his attorney registration fee. Mayrand was suspended in 2002 for failing to pay his attorney registration fee, and he has remained suspended ever since.

Finally, we have said that "[f]ailure to cooperate with the disciplinary process constitutes separate misconduct warranting discipline independent from the conduct underlying the petition." *In re Brooks*, 696 N.W.2d 84, 88 (Minn.2005). Even before absenting himself from these proceedings, Mayrand's cooperation with the Director was far from exemplary, evidenced by his failure to respond to numerous Director inquiries and falsely promising to deliver relevant documents. After submitting an answer in January 2001, Mayrand has had no involvement in these proceedings, despite persistent efforts by the Director to contact him. We will not reward respondents who fail to answer for their own misconduct.

We conclude that the appropriate discipline in this case is disbarment. Accordingly, we order that:

(1) Respondent Peter Mayrand is hereby disbarred from the practice of law, effective immediately.

(2) Mayrand shall comply with the requirements of Rule 26, RLPR, in providing notice to clients, parties, and tribunals, delivering clients' papers and property, and providing proof of compliance to the Director.

(3) Mayrand shall pay to the Director the sum of $900 in costs and disbursements pursuant to Rule 24, RLPR.

So ordered.