In re Petition for DISCIPLINARY AC-
TION AGAINST Joseph Anthony
RYMANOWSKI, Jr., a Minnesota At-
torney, Registration No. 240606.

No. A11–0340.

Supreme Court of Minnesota.

Jan. 18, 2012.

Martin A. Cole, Director, Patrick R. Burns, First Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for petitioner.

Joseph A. Rymanowski, Jr., St. Paul, MN, pro se.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) served and filed a petition for disciplinary action against Joseph Anthony Rymanowski, Jr. The petition alleges that Rymanowski engaged in professional misconduct

involving a number of clients. As alleged, the misconduct includes Rymanowski's failure to provide competent representation, failure to consult with a client before filing a counterclaim, failure to act with diligence and promptness, failure to communicate with clients, failure to return fees paid for services he never provided, failure to safeguard client funds in his trust account, failure to provide notice of withdrawals from his trust account, failure to provide an accounting of his clients' funds, failure to provide reasonable notice before terminating representation, failure to repay unearned advance fees, initiation of a nonmeritorious claim, failure to expedite litigation consistent with his clients' interests, failure to obey the rules of a tribunal, failure to reasonably and diligently respond to discovery requests, dishonesty, and failure to cooperate with the disciplinary process. The petition further alleges that Rymanowski's conduct violated Minn. R. Prof. Conduct 1.1,[1] 1.2,[2] 1.3,[3] 1.4,[4] 1.5,[5] 1.15(a) and (b),[6] 1.16(d),[7] 3.1,[8] 3.2,[9] 3.4(c)

1. Rule 1.1, Minn. R. Prof. Conduct, states: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

2. Rule 1.2, Minn. R. Prof. Conduct, states, in relevant part:

   Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation.

3. Rule 1.3, Minn. R. Prof. Conduct, states: "A lawyer shall act with reasonable diligence and promptness in representing a client."

4. Rule 1.4, Minn. R. Prof. Conduct, states:

   (a) A lawyer shall
   (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these rules;
   (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
   (3) keep the client reasonably informed about the status of the matter; [and]
   (4) promptly comply with reasonable requests for information[.]
   . . .
   (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

5. Rule 1.5, Minn. R. Prof. Conduct, states, in relevant part: "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses."

6. Rule 1.15(a) and (b), Minn. R. Prof. Conduct, state:

   (a) All funds of clients or third persons held by a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts as set forth in paragraphs (d) through (g) and as defined in paragraph (o ). . . .
   (b) A lawyer must withdraw earned fees and any other funds belonging to the lawyer or the law firm from the trust account within a reasonable time after the fees have been earned or entitlement to the funds has been established, and the lawyer must provide the client or third person with:
   (i) written notice of the time, amount, and purpose of the withdrawal; and
   (ii) an accounting of the client's or third person's funds in the trust account.

7. Rule 1.16(d), Minn. R. Prof. Conduct, states:

   Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fees or expenses that has not been earned or incurred.

8. Rule 3.1, Minn. R. Prof. Conduct, states, in relevant part: "A lawyer shall not bring or defend a proceeding, or assert or controvert

and (d),[10] 8.1(b),[11] 8.4(c) and (d),[12] and Rule 25,[13] Rules on Lawyers Professional Responsibility (RLPR).

Rymanowski was admitted to practice law in Minnesota on October 22, 1993. Rymanowski's disciplinary history includes a private admonition in 1999 for failing to pay a judgment entered against him for professionally incurred indebtedness and for failing to comply with a court order requiring financial disclosures. It also includes private probation in 2003 for failing to properly maintain his client trust account and failing to cooperate with the Director's investigation of his trust account. Rymanowski is currently administratively suspended from the practice of law in Minnesota for failing to pay the attorney registration fee that was due on October 1, 2010.

Rymanowski was personally served with the disciplinary petition on February 14, 2011. He has not filed an answer or otherwise responded to the petition. As a result of Rymanowski's failure to answer the petition, the allegations in the petition are deemed admitted, pursuant to Rule 13(b), RLPR. In addition to not answering or otherwise responding to the petition, Rymanowski did not file a brief or appear at oral argument before our court. Because Rymanowski's admitted misconduct constitutes serious misconduct in violation of our professional conduct rules, we conclude that disbarment is the appropriate sanction.

an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law."

9. Rule 3.2, Minn. R. Prof. Conduct, states: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

10. Rule 3.4(c) and (d), Minn. R. Prof. Conduct, state:

A lawyer shall not:

. . .

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists; [or]

(d) in pretrial procedure . . . fail to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party[.]

11. Rule 8.1(b), Minn. R. Prof. Conduct, states: "[A] lawyer in connection with . . . a disciplinary matter, shall not . . . knowingly fail to respond to a lawful demand for information from a[ ] . . . disciplinary authority. . . ."

12. Rule 8.4(c) and (d), Minn. R. Prof. Conduct, state: "It is professional misconduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; [or] (d) engage in conduct that is prejudicial to the administration of justice[.]"

13. Rule 25, RLPR, states:

(a) Lawyer's duty. It shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with the District Committee, the Director, or the Director's staff, the Board, or a Panel, by complying with reasonable requests, including requests to:

(1) Furnish designated papers, documents or tangible objects;

(2) Furnish in writing a full and complete explanation covering the matter under consideration;

(3) Appear for conferences and hearings at the times and places designated;

(4) Execute authorizations and releases necessary to investigate alleged violations of a conditional admission agreement.

. . . .

(b) Grounds of discipline. Violation of this Rule is unprofessional conduct and shall constitute a ground for discipline; provided, however, that a lawyer's challenge to the Director's requests shall not constitute lack of cooperation if the challenge is promptly made, is in good faith and is asserted for a substantial purpose other than delay.

## I.

Rymanowski's misconduct falls into four categories: financial misconduct, client neglect, conduct prejudicial to the administration of justice, and noncooperation with the disciplinary process. We summarize that misconduct below.

■ Rymanowski was retained by Client A [14] as counsel in her marriage dissolution. During his representation of Client A, Rymanowski was entrusted with a $6,800 check, payable to a business Client A and her husband operated. Disposition of the check was discussed at a court hearing on February 23, 2010. At that hearing, Rymanowski was directed to deposit the check into his trust account with the understanding that opposing counsel would be consulted before any disbursements of the proceeds from the check were made. Proceeds from the check were not deposited into Rymanowski's trust account until May 6, 2010. Subsequently, Rymanowski disbursed the proceeds from the check, issuing one check for $1,000 payable to his client and five checks payable to himself totaling $5,800. Rymanowski did not consult with opposing counsel before these disbursements were made, nor did he disclose to opposing counsel that five of the disbursements were to himself. Rymanowski abandoned his representation of Client A in mid–2010 and ceased all communication with her. Rymanowski's conduct violated Minn. R. Prof. Conduct 1.1, 1.3, 1.4, 1.15(a) and (b), 3.4(c), and 8.4(c) and (d).

■ Rymanowski was retained by Client B as counsel in a civil suit. As part of his representation of Client B, Rymanowski failed to timely respond to discovery requests, prompting opposing counsel to file two motions to compel. Rymanowski withdrew as counsel for Client B the day before a scheduled motion-to-compel hearing. As a result, Client B was unrepresented at the hearing. Rymanowski's conduct violated Minn. R. Prof. Conduct 1.1, 1.3, 1.4, 1.16(d), 3.4(d), and 8.4(d).

■ The principals of a limited liability company (Client C) retained Rymanowski in connection with a pending possession-of-commercial-property action in housing court. After convincing Client C that the housing court action should be dismissed and that Client C should instead pursue an action for damages, Rymanowski commenced a civil action. Over the course of his representation, Rymanowski failed to respond to discovery requests and failed to inform his clients about discovery requests and scheduled depositions. As a result, the principals missed their scheduled depositions. Less than two weeks after the missed depositions, opposing counsel moved for summary judgment based in large part on Rymanowski's failure to comply with the discovery requests. Rymanowski's conduct violated Minn. R. Prof. Conduct 1.1, 1.3, 1.4, 3.2, 3.4(d), and 8.4(d).

■ In another client matter, Rymanowski was retained to assist a group of professionals (Client D) in a civil dispute. In June 2008, Rymanowski received $16,000 as an advance against fees that were to be retained in his trust account until earned. The Director's investigation was unable to determine whether the $16,000 advance was actually deposited into Rymanowski's trust account. The investigation did, however, disclose that the $16,000 was not in Rymanowski's trust account at the time of the investigation and that Rymanowski never provided his

---

14. We identify Rymanowski's clients by letter. *See* Minn. R. Pub. Access to Recs. of Jud. Branch 8, subd. 2(b).

clients with written notice of the "time, amount, and the purpose of withdrawals from the funds that were to be held in trust nor did he provide the clients with an accounting" of those funds. Additionally, Rymanowski failed to adequately communicate with Client D or keep Client D reasonably informed about the progress of the matter despite the clients' numerous requests for information. Rymanowski's conduct violated Minn. R. Prof. Conduct 1.1, 1.3, 1.4, and 1.15(b).

■ Rymanowski was retained by Client E on November 28, 2009, for the purpose of reviewing the conservatorship of her son. Rymanowski was paid an initial advance fee of $500 and was later paid an additional $2,000 nonrefundable flat fee to file a motion to have Client E's son released from a group home. On May 19, 2010, Rymanowski told Client E that he could not get her son out of the group home and indicated that he would refund the fee she had paid for that purpose. On June 9, 2010, Rymanowski called Client E and told her that a court hearing had been set for July 8, 2010, on a motion to remove her son from the group home and that she was not to attend the hearing. Rymanowski provided no explanation to Client E as to how the court hearing date had arisen after earlier telling her that he could not get her son out of the group home. On July 8, Client E called the court to learn the outcome of the hearing, only to be told that no such hearing had been scheduled or had taken place. Despite numerous attempts by Client E to contact Rymanowski, Rymanowski has not communicated with Client E or refunded any of the fees. Rymanowski's conduct violated Minn. R. Prof. Conduct 1.1, 1.3, 1.4, 1.5, and 8.4(c).

■ Rymanowski was retained by Client F to file underpaid patient medical claims in workers' compensation matters. For his services, Rymanowski was paid an advance fee of $10,000. The Director's investigation was again unable to determine whether this advance fee was ever deposited in Rymanowski's trust account, but the funds were not in the account at the time of the investigation. Client F sent Rymanowski approximately 20 claims to pursue, but Rymanowski did nothing to pursue any of the claims and failed to communicate with Client F about the status of the claims. Rymanowski was discharged as Client F's counsel in 2010 and has not refunded any portion of the $10,000 advance fee payment. Rymanowski's conduct violated Minn. R. Prof. Conduct 1.1, 1.3, 1.4, 1.15(b), 1.16(d), and 8.4(c).

■ Rymanowski was retained by Client G in 2009 to help defend a claim for past due assessments owed to a townhouse homeowners' association (the association). In December 2009, on Client G's behalf, Rymanowski served an answer and counterclaim in response to the association's summons and complaint. The counterclaim was asserted without consulting Client G. Rymanowski failed to appear in court on August 31, 2010, for a hearing on a summary judgment motion brought by the association. Rymanowski did not inform Client G of the hearing on the motion, although Client G attended the hearing. At the hearing, Client G indicated that he was unaware of the counterclaim and that he believed the association did not owe him any money. Judgment was entered against Client G in the amount of $11,873.60, of which $7,030.50 was awarded for attorney fees. Client G's counterclaim was dismissed with prejudice. Rymanowski's conduct violated Minn. R. Prof. Conduct 1.1, 1.2, 1.3, 1.4, 3.1, and 8.4(d).

■ In addition to the misconduct discussed above, Rymanowski failed to cooperate with the Director's investigation of his misconduct. It appears Rymanowski

has never filed a written response to *any* of the notices of investigation in any of the matters set out above. In early September 2010, a representative of the Director's Office spoke with Rymanowski regarding Rymanowski's law practice. Rymanowski indicated that he had 15 to 20 open client matters. Arrangements were made for Rymanowski to deliver his client files to the Director so the files could be returned to the clients. A few days later, Rymanowski delivered seven client files to the Director's Office. The petition does not indicate what happened to the other 8 to 13 files. Rymanowski's failure to cooperate violated Minn. R. Prof. Conduct 8.1(b) and Rule 25, RLPR.

## II.

Because the allegations in the petition are deemed admitted, our only task is to determine the appropriate discipline. *In re Swensen*, 743 N.W.2d 243, 247 (Minn.2007). "Disciplinary sanctions for professional misconduct are imposed to protect the public and the judicial system, and to deter future misconduct." *In re Crandall*, 699 N.W.2d 769, 771 (Minn. 2005). We consider four factors when determining the appropriate sanctions: (1) the nature of the misconduct; (2) the cumulative weight of the violations of the rules of professional conduct; (3) the harm to the public; and (4) the harm to the legal profession. *Id.* at 772. We also consider aggravating and mitigating circumstances. *In re Mayrand*, 723 N.W.2d 261, 268 (Minn.2006). Previous cases may provide helpful guidance, but "sanctions are determined on a case-by-case basis." *Id.*

### Nature of the Misconduct

First, Rymanowski has engaged in serious misconduct. Financial misconduct alone typically warrants severe discipline. *See, e.g., In re Garcia*, 792 N.W.2d 434, 443 (Minn.2010) ("Misappropriation of client funds alone 'is particularly serious misconduct and usually warrants disbarment absent clear and convincing evidence of substantial mitigating factors.'" (quoting *In re Rhodes*, 740 N.W.2d 574, 579 (Minn.2007))). When direct evidence of misappropriation is lacking, severe discipline may nevertheless be warranted when the lack of evidence is due to an attorney's failure to account for client funds. *See Rhodes*, 740 N.W.2d at 579, 581 (failing to account for client funds—in addition to other misconduct—warranted disbarment). Depending on the severity, client neglect alone may also warrant indefinite suspension or disbarment. *In re Walker*, 461 N.W.2d 219, 220, 222 (Minn.1990). Moreover, noncooperation may warrant indefinite suspension and, if committed in combination with other misconduct, warrants more severe discipline. *See In re Samborski*, 644 N.W.2d 402, 407 (Minn.2002).

Rymanowski engaged in financial misconduct by failing to deposit the proceeds from a check into his trust account in a timely manner (in the Client A matter) and by failing to account for withdrawn funds (in the Clients A, D, and F matters). In two client matters (Clients E and F), the financial misconduct is particularly egregious because Rymanowski accepted payment for services that he never provided, the funds are not in his trust account, and he did not return the unearned fees to the clients. Rymanowski also neglected his cases by, for example, entirely failing to work on one client's case, repeatedly neglecting discovery in two cases, failing to act with diligence and promptness, and failing to communicate with his clients. Finally, Rymanowski failed to cooperate with the disciplinary process. He has had minimal contact with the Director's Office and has not responded in writing to any of the notices from the Director's Office.

This behavior constitutes serious misconduct.

*Cumulative Weight of the Disciplinary Violations*

Here, Rymanowski, as detailed above, has committed financial misconduct, neglected his clients, engaged in other conduct prejudicial to the administration of justice, and failed to cooperate with the disciplinary process. Such extensive misconduct counsels in favor of disbarment. We find two cases to be particularly instructive; both cases involved similar misconduct and, in both cases, the attorney was disbarred.

In *Mayrand,* we disbarred an attorney who failed to act with competence and diligence, failed to communicate with his clients, abandoned clients before securing resolution of their cases, failed to properly maintain his trust account, failed to provide clients with an accounting of funds, and failed to cooperate with the disciplinary process. 723 N.W.2d at 266–68. We said Mayrand's misconduct struck "at the heart of the attorney-client bond." *Id.* at 269. In *Walker,* the attorney's misconduct was also similar to Rymanowski's misconduct. There, we held that, "[b]ecause of the numerous individual violations, any one of which would warrant serious discipline, we believe that disbarment is the only appropriate remedy." 461 N.W.2d at 223.

*Harm to the Public and Legal Profession*

██ When determining whether an attorney's misconduct harmed the public and legal profession, we consider " 'the number of clients harmed [and] the extent of the clients' injuries.' " *In re Coleman,* 793 N.W.2d 296, 308 (Minn.2011) (quoting *In re Randall,* 562 N.W.2d 679, 683 (Minn. 1997)). Rymanowski's financial misconduct and client neglect has harmed not only his clients, but has harmed the public and legal profession as well. *See, e.g., In re Swokowski,* 796 N.W.2d 317, 327 (Minn. 2011) (misappropriating funds harms the public and legal profession); *In re Letourneau,* 792 N.W.2d 444, 453 (Minn.2011) (neglecting clients harms the public and legal profession). By its nature, conduct that is detrimental to the administration of justice harms the public and the legal profession.

Rymanowski's misconduct affected numerous clients and resulted in adverse effects for those clients and the public. As discussed above, at least two clients suffered financial consequences—to wit, they paid thousands of dollars for legal services they never received. Moreover, Rymanowski's neglect of his discovery obligations resulted in inefficiencies for his clients, opposing parties and their attorneys, and the legal system more broadly. In the Client B matter, Rymanowski's delay prompted opposing counsel—on two separate occasions—to file a motion to compel discovery. In the Client C matter, Rymanowski persuaded his clients to pursue a civil action and then neglected his discovery obligations, causing the clients to miss scheduled depositions and prompting opposing counsel to bring a motion for summary judgment. Thus, although the consequences of Rymanowski's neglect were acutely felt by his clients, they were also borne by the public.

*Aggravating and Mitigating Factors*

██ "[W]e consider a lawyer's prior discipline and professional misconduct when determining the appropriate discipline for new misconduct[ ]" and "generally impose 'more severe sanctions when the current misconduct is similar to misconduct for which the attorney has already been disciplined.' " *Rhodes,* 740 N.W.2d at 580 (quoting *In re Brooks,* 696 N.W.2d 84, 88 (Minn.2005)). Rymanowski was privately admonished in September 1999 and he was put on private probation in 2003. The 2003 discipline involved the same type

of conduct at issue here—namely improper trust account maintenance and failure to cooperate with the disciplinary process. Rymanowski's disciplinary history is an aggravating factor.

The record before us does not contain any evidence that would mitigate Rymanowski's misconduct. Although there is some suggestion in the petition that Rymanowski may suffer from some psychological disorder, we decline to consider any such disorder here because there is nothing in the record to support our consideration of such a disorder as a mitigating factor.[15] *See, e.g., In re Ladd,* 463 N.W.2d 281, 283 (Minn.1990) (holding that because our court is not a fact-finding body, "respondent's failure to answer the petition with any mitigating circumstances bars our consideration of such issues").

We hold that the appropriate sanction for Rymanowski's misconduct is disbarment. Therefore, we order that, upon the filing of this opinion, Joseph Anthony Rymanowski, Jr., is disbarred from the practice of law in the State of Minnesota. We further order that Rymanowski comply with Rule 26, RLPR, and pay $900 in costs, pursuant to Rule 24, RLPR.

Disbarred.

---

**15.** The petition indicates that Rymanowski informed the Director that he was suffering from psychiatric problems. On September 7, 2010, Rymanowski informed the Director that he had been hospitalized for psychiatric problems and that he was having difficulty practicing law. In an attempt to verify Rymanowski's claim of psychiatric problems, the Director sent medical authorizations to Rymanowski on September 29, 2010, and followed up twice requesting that Rymanowski sign and return the forms. Rymanowski never signed and returned the forms. On October 20, 2010, Rymanowski called the Director and stated that he was then in inpatient treatment and would be there for the next 30 days. On November 1, 2010, the Director sent medical authorizations to the center where Rymanowski said he was receiving inpatient treatment. The mailing sent to the treatment center was returned to the Director as undeliverable. Because Rymanowski has not signed and returned any medical authorizations, the Director has been unable to verify what role, if any, Rymanowski's purported psychiatric problems may have played in his misconduct.